## MAXWELL HOUSE HOTEL v. WOODS, Housing Expediter.

### No. 464.

United States Emergency Court of Appeals.

Heard at Nashville, Tenn., June 19, 1948.

Decided Aug. 17, 1948.

Jack Keefe, of Nashville, Tenn., for complainant.

Betty L. Brown, Atty., Office of Housing Expediter, of Washington, D. C. (Ed Dupree, Gen. Counsel, Robert A. Sauer, Ass't. Gen. Counsel, P. Liff, Chief, Appeals Section, and John B. Duncan, Atty., all of Office of Housing Expediter, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and McALLISTER and LINDLEY, Judges.

LINDLEY, Judge.

This is a complaint under Section 204(a) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix § 924(a), by the Maxwell House Hotel, challenging the Housing Expediter's denial of a part of a protest directed against an order of the Rent Director for the Nashville, Tennessee, Defense-Rental Area, establishing the maximum room rentals for 188 rooms in the Maxwell House in Nashville. The pendency of an enforcement action gives us jurisdiction.

The Rent Regulation for Hotels and Rooming Houses, 8 F. R. 7334, effective in the Nashville Area on December 1, 1942, fixed the thirty days preceding March 1, 1942, as the base period for determining maximum room rates. In January, 1943, the rooms were registered with the Area Rent Director. In completing the registration form, complainant apparently quoted the rates then appearing on its "room rack." On January 29, 1944, complainant was notified that the registration form was not properly filled out. Ultimately, complainant having failed to file corrected registrations, the Director proceeded, under Section 5(d)·of the Regulation, to determine the maximum rents. That Section is, in part, as follows: "If the rent on the date determining the maximum rent * * * is in doubt, or is not known, the Administrator * * * at any time on his own initiative, may enter an order fixing the maximum rent by determining such fact. * * * If the administrator is unable to ascertain such fact, or facts, he shall enter the order on the basis of the rent which he finds was generally prevailing in the defense-rental area for comparable housing accommodations on the maximum rent date * * *." The Director made a finding that the rates during the base period were in doubt or unknown and could not be ascertained and, then, in accord with the quoted language, determined the maximum rates on the basis of rents generally prevailing in the area in the base period for comparable accommodations.

On September 6, 1945, the Director issued his order establishing maximum rates, the same being in most instances less than those shown on complainant's registration

statement. The order was made retroactive to December 1, 1942. The Housing Expediter granted complainant's protest insofar as the order was made retroactive, but denied it in all other respects. This complaint followed.

Complainant's basic contentions are, (1), that the maximum rents during the base period were not in doubt, but were known and easily ascertainable and that it was improper, therefore, for the Director to fix them on the basis of comparability and, (2), that the rates fixed are unreasonable, arbitrary, confiscatory and inequitable.

The record discloses that the hotel was built in 1860 of brick construction, with colonial design both inside and outside, and had once been outstanding in Nashville. However, in the years immediately prior to 1941, the hotel had deteriorated in character, value and reputation to such an extent as to cause it to become a third or fourth rate hotel. In February, 1941, it came under new management. The new regime immediately began an intensive and aggressive program to restore the hotel to its former place of prominence in the community. On April 24, 1941, an "opening ball" was held to advertise the new management and to demonstrate the intent to improve the hotel's reputation and patronage. It is undisputed that the management achieved, in no small measure, success in its renovation and restoration program.

Complainant contends that the rates shown on its registration statement were those charged during the base period. In fact, it insists that it established its rates at the time of its formal opening in April, 1941, and has continuously charged the same since that time. As proof, it has submitted the affidavits of four persons who served as room clerks at various times during the period in question. In addition, two of its housekeepers aver that the registered rates were the same rates as those posted in each room at all times since April, 1941.

To justify the finding that the rates during the base period were in doubt or unknown, respondent relies upon evidence that complainant's records for the base period had been destroyed by its employees, contrary to the provisions of Section 7(2) of the Rent Regulation, which provides that "Every landlord of a room rented or offered for rent shall preserve, and make available for examination by the Administrator, all his existing records showing or relating to (i) the rent for each term and number of occupants for which such room was rented or regularly offered for rent during the thirty-day period determining the maximum rent for such room, * * *." Though the record is not clear as to the circumstances under which the records disappeared, one of complainant's employees testified that in February, 1944, she had destroyed them because there was not room behind the desk for all of them. Respondent does not contend that the management ordered their destruction, but stresses the fact that they disappeared after complainant had been notified that its January, 1943, registration form was not in proper form.

■ As additional evidence that the rates were in doubt or unknown, respondent placed in the record proof that complainant's advertised rates, its rates shown on a report filed with the Tennessee State Department of Finance and Taxation, and certain rates disclosed by an OPA audit of October, 1942, records, are at variance with the rates shown on complainant's registration statement. The Director also argues that, due to complainant's success in restoring the hotel, there was a probability that it might have been in the process of increasing its rates during the period in question. Standing alone, the evidence falls short of proof of all that respondent claims for it; but, when considered in conjunction with complainant's failure to preserve the base period records in accord with Section 7(e) of the regulation and other controverted evidence, it can not be said that the Director unreasonably found, upon conflicting evidence, that the rates during the base period were in doubt. The failure of complainant to comply with the regulation, however innocent, placed upon it the burden to prove that the registered rates were the rates charged during the base period. Under the circumstances, we think we have no right to interfere with the Director's finding of fact.

The objection that the rates fixed by the Director are unreasonable, arbitrary, con-

662

fiscatory and inequitable, centers around complainant's contention that the record reflects a complete lack of intelligent appraisal of the hotel and its rooms; that the officials fixing the rates were, obviously, either ignorant of the elements entering into establishment of a proper rate structure for hotels, or made no adequate inspection, or arbitrarily ignored such essential factors as size, location, equipment and furnishings of the various rooms; the result being that the rate schedule established improper absurd differentials among many of the rooms.

An examination of the size, furnishing, and equipment of specific rooms and the rates fixed for them accentuates the seriousnes of complainant's objection. Thus, the examiner listed room #309 as being 16 x 18 in size. Actually, the room is 10 x 12. It is an outside room with one double bed and only one window, and is priced by the Director at $3.50. Room 230 is an outside room, 20 x 22, has two windows, two single beds, and is also priced at $3.50. Room 311, an inside room, approximately the same size as room 309, is priced at $3.50. Room 304, an outside room, 10 x 20, with two windows, is priced the same as room 309. Rooms 308 and 310, outside rooms, 14 x 20, with two windows and two double beds are priced at $3.50. Rooms 322, 326 and 328 are outside rooms, 20 x 22, with two windows and two double beds, and are priced at $3.50. Room 341, a small 10 x 12 inside room, with one double bed and one window, is priced at $3.50, while room 346, an outside room, 20 x 20, with two windows, is priced at $2.50, $1.00 less than the smaller inside room. Room 546, a 20 x 20 outside room is priced the same as room 541, a small 10 x 12 inside room. These are vivid examples evincing the fact that the examiner fixed the same rates for large outside rooms with better exposure and more furniture as those he fixed for small inside rooms with less furniture.

Rooms 473, 475, 477 and 479 are outside rooms with bath priced at $2.50. Rooms 472, 474, 476 and 478, directly across the hall, without bath, and approximately the same size are priced at $2.25, only 25 cents less than the rooms with bath. The reasonable differential between rooms with bath and those without bath is much greater.

 Complainant has directed our attention to other similar glaring unexplained discrepancies which we think it unnecessary to detail. Suffice it to say that the mentioned comparisons and others appearing in the record inevitably impel us to the conclusion that the Director's subordinates, in fixing the rate schedule, capriciously failed to give consideration to such essential factors as size, location and furnishings of the rooms. They arbitrarily ignored obvious salient facts. Indeed, the Director's statement, when he was confronted with the examiner's schedule, is not without significance. His explanation of the discrepancies was that the examiner must have seen but one or two rooms and assumed that they were typical of all others throughout the hotel. The result was an unreasonable, arbitrary rate schedule, which must be set aside.

Judgment will enter setting aside the order.